UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE H. YUILLE,

            Plaintiff,

v.

AMERICAN HOME MORTGAGE
SERVICING, INC., et al.,

            Defendants.

_____/

CIVIL ACTION NO. 09-11203

DISTRICT JUDGE BERNARD A. FRIEDMAN

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**:

I recommend that Plaintiff's Motion for Summary Judgment be DENIED; that

Defendants' Motion for Summary Judgment be GRANTED; that Judgment be entered

for Defendants on Counts II, III, IV and V of the Amended Complaint, and that this case

be closed.

**II.    REPORT**:

    **A.    Procedural History**

Plaintiff filed this action in the Oakland County Circuit Court on March 4, 2009.

Defendants exercised their right of removal under 28 U.S.C. §1332 et seq. on March 31,

2009 (Docket No. 1).  Plaintiff filed an Amended Complaint on April 13, 2009 (Docket No.

4).  Defendants filed their Answers on March 23, 2009 (Docket Nos. 7-9).  Plaintiff's effort

to secure remand failed (Docket Nos. 11, 18, 25), and a Scheduling Order issued (Docket

No. 27).  The parties stipulated to dismissal of all class action claims on September 23,

2009 (Docket No. 38).  Discovery and extensive motion practice followed.  The parties

stipulated to further amendment of the Complaint on February 4, 2010 (Docket No. 100) and May 20, 2010 (Docket No. 125).

Defendants filed their Motion for Summary Judgment on June 11, 2010 (Docket No. 127). Plaintiff's Response was filed on July 2, 2010 (Docket No. 130), and Defendants' Reply was filed on July 16, 2010 (Docket No. 131). Plaintiff filed his Motion for Summary Judgment on June 11, 2010 (Docket No. 128). Defendants filed their Response Brief on July 2, 2010 (Docket No. 129), and Plaintiff's Reply was filed on July 16, 2010 (Docket No. 132).

### B.    Applicable Law and Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); Martin v. Ohio Turnpike Comm'n, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. Id. at 1435-36. The

moving party has the burden of showing conclusively that no genuine issue of material fact exists. Id. At 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. Id.; Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. Anderson, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted); see Celotex, 477 U.S. at 322-23; Matsushita, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient

to require submission of the issue to the jury.  <u>Lucas v. Leaseway Multi Transp. Serv., Inc.</u>, 738 F.Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), <u>aff'd</u> 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find the plaintiff." <u>Anderson</u>, 477 U.S. at 252; <u>see</u> <u>Cox v. Ky. Dep't of Transp.</u>, 53 F.3d 146, 150 (6th Cir. 1995).

### C.  Factual History

On April 5, 2006, Plaintiff re-financed real property commonly known as 4424 Newcastle Drive, Clarkston, Michigan, 48348 (the "Property").  In the refinance transaction, Plaintiff obtained a loan in the amount of $3,600,000 (the "Loan") from American Brokers Conduit ("ABC"), and executed a promissory note (the "Note").  See Docket #127, Exhibit 1,[1] Adjustable Rate Note.  ABC is named as the "Lender" in the Note.  Plaintiff does not dispute that he received the $3.6 million and used it to pay off a prior mortgage held on the Property.  See Exhibit 3, Dep. Tr. of Plaintiff, p. 47-49.  Plaintiff claims that he did not decide on the loan amount; that he never considered how much his monthly payment would be; and that he instead simply signed all documents without reading them or considering their ramifications.  Exhibit 3, p. 44-45.

Paragraph 1 of the Note specifically allows it to be transferred, or sold:

> I understand that Lender may transfer this Note.  "The lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" See Exhibit 1, ¶ 1.

---

[1] Unless otherwise specified, all exhibits referenced herein will be those attached to Defendants' Motion for Summary Judgment (Docket #127, filed June 11, 2010).

The Loan was secured by a mortgage on the Property granted by Plaintiff and his spouse to MERS (Mortgage Electronic Registration Systems, Inc.), solely as nominee for the Lender (ABC) and its successor and assigns (the "ABC Mortgage"). See Exhibit 2, ABC Mortgage. The ABC Mortgage and Note were recorded on April 19, 2006, in Liber 37505, pp. 302-23, Oakland County Records. Plaintiff admits that he signed the ABC Mortgage, as well as the Note. See Exhibit 3, Dep. Tr. of Plaintiff, pp. 47-48, 51-52. Plaintiff testified that he did not read any of the documents presented to him at closing, although he admits that he was not denied the opportunity. *Id.* at pp. 33, 52.

MERS is a corporate entity which is widely employed in mortgage transactions. Typically, MERS is part of a contractual agreement under which a lender makes a loan to a borrower/mortgagor, and the mortgagor and lender, in turn, agree to name MERS as the mortgagee in the security instrument that secures the loan on the behalf of the lender and its successors and assigns. In this case, MERS was named as the original mortgagee in the Mortgage solely as the nominee of the Lender. In that capacity, according to the terms of the Mortgage, MERS exercises the same general rights and powers possessed by any mortgagee, such as the right to foreclose and sue the Property upon a borrowers' default, or to assign its lien interests and release its lien interests in county land records. MERS is designed to eliminate the need to prepare and record assignments with the county register of deeds when a residential loan is sold or transferred, because MERS always remains the named mortgagee for the lender and its assigns.

Plaintiff claims that he does not know whom he should pay to satisfy his obligations pursuant to the Loan and Mortgage (see Exhibit 3, p. 64). He has sued MERS, American Home Mortgage Servicing, Inc. ("AHMSI"), Deutsche Bank National Trust Company

("Deutsche Bank"), and GSR Mortgage Loan Trust 2006-OA1 ("Trust"), seeking to quiet his title to the Property, free of the lien of the Mortgage.

AHMSI was designated by ABC as the servicing agent on the Note and Mortgage. As a servicer, AHMSI's functions include collecting monthly payments, and ensuring that things such as hazard insurance and taxes are timely paid. AHMSI has no ownership interest in the Note, but has serviced the loan for the lender since its inception in 2006, as evidenced by the Monthly Payment Information Letter, that was initialed by Plaintiff at the closing of this loan. See Exhibit 4, Payment Information Letter. There is no evidence that any entity other than AHMSI has serviced Plaintiff's Loan.

Deutsche Bank National Trust Company is Trustee of the GSR Mortgage Loan Trust 2006-OA1 pursuant to a Master Servicing and Trust Agreement. Defendants maintain that GRS Mortgage Loan Trust 2006-OA1 ("GSR") is the current owner of the Note. Plaintiff did not serve GSR with a copy of his Amended Complaint in this matter. He testified that he decided not to serve them with process because he "didn't figure he needed them in as a party." See Exhibit 3, p. 78.

The Mortgage signed by Plaintiff provides that:

> MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. (emphasis in original).

See Exhibit 2, p. 2, ¶ (C):

Moreover, Plaintiff expressly granted MERS enumerated powers in the Mortgage, as follows:

> This Security Instrument secures to Lender: (I) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property . . .
>
>         *                     *                     *
>
> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successor and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited, to, releasing and canceling this Security Instrument.

Exhibit 2, p. 3, ¶ (Q).

The Mortgage requires that payments be made in accordance with the Note. See Exhibit 2, p. 4. The Note requires that Plaintiff make monthly payments on the 1st day of each month beginning June 1, 2006. Exhibit 1, ¶ 3. From the outset, Plaintiff was late on his payments and, over the course of 16 months, only made one payment on a timely basis pursuant to the requirements of the Note and ABC Mortgage. See Exhibit 5, payment history. He does not contest the fact of his default. Plaintiff stated that he did not make payments on the Loan because he "decided he needed the money for other purposes." Exhibit 3, p. 32. Default notices were sent to Plaintiff by AHMSI, as servicer of Plaintiff's Note. Plaintiff admits that he received the notices of default and, when questioned about several notices that were sent to his residence, did not contest having received them. See Exhibit 3, pp. 56-57; 59-62.

An Assignment of Mortgage (see Exhibit 8), purporting to be effective as of February 13, 2009, and was executed on February 19, 2009, from MERS, as nominee for ABC to Defendant Deutsche Bank National Trust Company ("Deutsche"), not in its individual capacity, but solely as trustee on behalf of Defendant GSR Mortgage Loan Trust 2006 OA1, and was recorded on February 25, 2009, in Liber 29670, pages 323-24, Oakland County Records.

Foreclosure proceedings were commenced in February 2009, by an Affidavit of Posting at the Property. (See Exhibit 6). A sheriff's sale was scheduled to take place on March 17, 2009. (See Exhibit 7.)

On March 4, 2009, Plaintiff filed this suit in Oakland County Circuit Court. On March 31, 2009, Defendants exercised their right of removal pursuant to 28 U.S.C. §1332, *et seq.* On April 13, 2009, Plaintiff filed his First Amended Complaint. Plaintiff later agreed, through two different stipulations, to withdraw several of his claims. A copy of the current (i.e., most recent redacted) Amended Complaint is attached as Exhibit 10. At this time, no sheriff's sale is pending, as the parties have agreed to postpone a sheriff's sale during the pendency of this suit.

On February 10, 2010, a Corrective Assignment of Mortgage was executed, which states that it replaces the February 19, 2009 Assignment of Mortgage. The Corrective Assignment was executed by MERS, as nominee for ABC to Deutsche Bank, and was recorded on February 16, 2010, in Liber 26350, p. 531, Oakland County Records. See Exhibit 9, Corrective Assignment of Mortgage.

**D.    Analysis**

**1.    Quiet Title Claim**

In Count II of his Amended Complaint, Plaintiff seeks the equitable remedy of a court declaration that the mortgage is void and unenforceable, and thus subject to removal as a cloud on his title to the property.  Defendants do not dispute that Yuille is the record title holder, but they contest his right to a Quiet Title decree.  The doctrine of unclean hands bars equitable relief from plaintiffs who have acted improperly.  "The clean hands maxim is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  Mudge v. Macomb County, 458 Mich. 87 (1998).  The unfair or overreaching conduct of a plaintiff need not be actionable to bar equitable relief.  Royce v. Duthler, 209 Mich.App. 682, 688-89 (1995).  Rather, the "cardinal principal that equity will not aid a party in doing that which is not equitable" will govern a court's disposition of an equitable claim.

Here, Plaintiff admits receiving $3.6 million in exchange for the note and mortgage. He further admits his failure to pay his debt, and yet he seeks this court's support in avoiding enforcement of the security interest.  Plaintiff relies upon a legal argument that the note and mortgage signed by him became separated, such that the mortgage never was, or ceased to be, a valid claim against the real property.  He offers no Michigan case authority for the proposition that a MERS style mortgage transaction is invalid in this State. Rather, he pursues this action as an effort to establish the very proposition upon which he relies.  In doing so, Yuille ignores the fact that the interests he seeks to invalidate were

specifically created by written contract to which he was a party. This court has held that a Plaintiff who expressly grants to MERS a mortgage as a nominee of a lender, and confers the right to foreclose in that capacity, cannot later contend that the right to foreclose did not exist. See Hilmon v. Mortgage Electronic Registration System, 2007 WL 1218718 (E.D. Mich.) at *3. The U.S. District Court for the Western District of Michigan has adopted the same reasoning. Corgan v. Deutsche Bank, 2010 WL 2854421 (W.D. Mich.) at *3. I am satisfied that Yuille's effort to avoid enforcement of contract rights expressly granted by him in exchange for valuable consideration is a breach of equity which forecloses relief on his Quiet Title claim.

Defendants further maintain that Plaintiff did not sue all proper parties. They argue that Plaintiff's Quiet Title claim must fail because he has not joined GSR Mortgage Loan Trust 2006-OA1 as a Defendant. They note that Plaintiff was aware of the trust by reason of the public notice posted on the real estate on February 18, 2009, and published on February 13, 2010. See Exhibit 6. Plaintiff named GSR as a Defendant in this action, but neglected to serve the trust with Summons and Complaint. He acknowledged that failure in his Deposition testimony (Exhibit 3, at page 78).

Yuille admits actual notice of GSR's interests. See Amended Complaint, Paragraphs 11, 12. He maintains, however, that naming Deutsche Bank is sufficient to assert his claim against GSR, because Deutsche Bank is the trustee of the trust. Nothing in his Amended Complaint, however, signifies that Plaintiff was suing Deutsche Bank in its capacity as trustee. The trust should have been served with Summons and Complaint. As Plaintiff has failed to pursue his Quiet Title claim against all parties who claim an

interest in the real estate, his Count II claim must fail. See Scott v. Saupe, 32 Mich.App. 503, 507 (1971).

Defendants also argue that Plaintiff has failed to establish a *prima facie* case for Quiet Title relief. Under Michigan law, a plaintiff in a Quiet Title action must make a *prima facie* case that his title is superior to the claims of all others whom may claim an interest in the property. Stinebaugh v. Bristol, 132 Mich.App. 311, 316 (1984).

Plaintiff argues that he met his burden by producing a certified copy of his warranty deed (Plaintiff's Motion for Summary Judgment, Page 4), and that the burden thus shifts to Defendants to prove superior right or title in themselves. See Beulah Hoagland Appleton Qualified Personal Resident's Trust v. Emmet Co. Road Comm., 236 Mich.App. 546 (1998). Defendants, however, contend that Plaintiff must do more than merely producing a warranty deed.

Defendants have presented unchallenged evidence that: a) Plaintiff signed the note and mortgage; b) Plaintiff did not make the payments as provided in the note; c) Plaintiff agreed to convey the mortgage to MERS as nominee of the lender (ABC) and its "successors and assigns;" and d) Defendants currently hold the original note, endorsed in blank by ABC. Defendants have also submitted excerpts of a "Master Servicing and Trust Agreement" under which GS Mortgage Security Corp. purported to convey various "mortgage loans" to Deutsche Bank as trustee for the GSR Mortgage Loan Trust 2006-AO1. Defendants maintain that ABC's interest in the Plaintiff's mortgage loan was among those. Finally, Defendants have produced an "assignment of mortgage," dated February 19, 2009, from MERS to Deutsche Bank as trustee of the trust. They also have produced a "corrective assignment," dated February 10, 2010, between the same parties and

regarding the same mortgage. The corrective assignment purports to replace the February 19, 2009 document.

Plaintiff argues that the chain of ownership of the note underlying his mortgage loan from ABC to GS Mortgage Security Corp. is not established in the record. I agree that the transfer from ABC to GS Mortgage Security Corp. and then to the Trust is not clearly demonstrated. My difficulty with Defendants' trust agreement is the lack of evidence that ABC transferred all its right in the mortgage loan to GS Mortgage Securities Corp. Nonetheless, Defendants are in possession of the original note, endorsed in blank by ABC. I also agree with Plaintiff that the GSR Mortgage Loan Trust Agreement confers no express right upon the trustee to institute mortgage foreclosure proceedings, although the Note and Mortgage Plaintiff signed do expressly confer such rights upon the Note Holder and Mortgagee. The use of the term "mortgage loan" in the Trust Agreement indicates an intent to transfer both the debt (note) and any security interest of the note holder. In a MERS transaction, the lender holds a beneficial interest in the mortgage as the entity on whose behalf the nominee (MERS) is appointed to act. The trust agreement does not call for transfer of the actual mortgage, because the lender is not the mortgagee. The trust agreement does manifest the intent to transfer to the trustee such rights in the mortgage as the transferor possessed. See Allardyce v. Dart, 291 Mich. 642, 645 (1934).

Accepting Plaintiff's argument, for purposes of analysis, and assuming that the transfer of the Note to the trust was invalid, there would be no evidence that any party other than ABC owns the note. The evidence is clear that the debt remains unpaid. Yet Plaintiff did not name ABC in his Amended Complaint, or serve ABC with Summons and

Complaint. His Quiet Title claim should not be countenanced under this scenario because Plaintiff has failed to name all parties known to have claims against the property.

A similar analysis would apply to the Mortgage. Assuming, for purposes of discussion, that the two assignments from MERS to Deutsche Bank were invalid, MERS would continue to be the Mortgagee, solely as nominee for ABC and its successors and assigns. The original mortgage transaction to which Yuille agreed would remain intact. There would be no separation of the Note and Mortgage, and the clear evidence of Plaintiff's default would defeat his quiet title claim.

Despite the alleged defects in the two assignments, however, the evidence is undisputed that MERS made two unequivocal attempts to transfer the mortgage to Deutsche Bank. Defendants cite case law for the proposition that a poorly drafted instrument creates an assignment if it clearly reflects an intent to assign "the thing" to the assignee. Burkhardt v. Bailey, 260 Mich.App. 606 (2009). Both assignments in this case, reflect the clear intent of MERS to convey its rights under the Plaintiff's mortgage to Deutsche Bank, as trustee. Neither party to the assignments has disavowed them. In fact, both parties have ratified the written assignments by their subsequent conduct. "[W]here a corporation has authorized or ratified the signature of its name in such manner as to bind the corporation itself, whether such authority or ratification were express and formal or arose from acquiescence and inaction, the signature cannot be disputed by any third party for the purpose of invalidating the [document] which the corporation itself cannot or does not attack. Long v. City of Monroe, 265 Mich. 425, 441 (1933) (emphasis added). Plaintiff, being a stranger to the transaction, is without standing to challenge its validity. An

assignee "stands in the position of the assignor, possessing the same rights and being subject to the same defenses." Burkhardt, 260 Mich.App. at 653.

Even accepting Plaintiff's position that the two assignments are invalid, the result would be that MERS remains the mortgagee as nominee of ABC or its successor's or assignees. The mortgage specifically confers the right to take such actions as any mortgagee could perform. On the other hand, if Defendants are correct and one or the other of the assignments of mortgage is valid, then Deutsche Bank succeeded to the interests of MERS which, as stated, are those of the mortgagee as nominee for ABC, its successors and assignees, with the same rights that MERS enjoyed. In any event, I am satisfied that any defect in the assignment documents has been overcome by reason of their ratification by the subsequent conduct of the parties in honoring the terms.

The case law in Michigan supports the legal conclusion that a MERS style (i.e. nominee) mortgage does not create an impermissible separation of ownership of the mortgage from the underlying debt so as to render the lien a nullity. Corrigan v. Deutsche Bank, 2010 WL 2854421 at * (W.D. Mich.) (citing Hilmon v. MERS, 2007 WL 1218718 at *3 (E.D. Mich.). ("Plaintiff, having expressly given MERS the right to foreclose as nominee for the lender, cannot now contend that MERS did not have the right to institute foreclosure proceedings.")). Such a separation is essential to Plaintiff's position that the mortgage in this case lacks validity.

The central issue in Count II of the Amended Complaint is whether the evidence establishes the superiority of Plaintiff's title to all other conflicting interests. Even if Yuille could escape the operation of the clean hands doctrine, the record here establishes the existence of a legally valid note and mortgage lien which have not been redeemed by the

payment or by operation of law. Both the Note and the Mortgage have been assigned to Deutsche Bank as Trustee for the GSR Mortgage Loan Trust 2006 OA1. Plaintiff's obligations under the Note are in default, and he has no valid ground for a judgment invalidating the Mortgage as a lien on his property.

Plaintiff contends that MCL 600.3204 bars MERS from foreclosing the mortgage. Section 22 of the Mortgage authorizes the "lender" to institute foreclosure proceedings after appropriate notice to the borrower. Plaintiff argues that MERS "is clearly not the lender," and that MCL 600.3204(1)(d) requires that the foreclosing party be "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." MERS is none of those.[2]

Defendants respond that MERS was not a party which instituted foreclosure proceedings against Plaintiff. That entity was Deutsche Bank. They maintain that Deutsche Bank does have an interest in the indebtedness secured by the mortgage, by reason of the transfer of Plaintiff's note by GS Mortgage Security Corp. under the GSR Mortgage Loan Trust 2006-AO1 agreement. As stated above, I agree with Plaintiff that the record does not establish a clear chain of transfer of the note from the original lender (ABC) to the GS Mortgage Security Corp. The evidence is undisputed, however, that the trust does possess the original note, signed by Plaintiff and endorsed in blank, by ABC.

In the final analysis, I conclude that the issue of who may, or may not, institute foreclosure proceedings against Plaintiff is not before this court. The foreclosure action

---

[2] Plaintiff makes a similar argument as to Defendants AHMSI and Deutsche Bank. AHMSI, however, was duly designated as the servicing agent of the mortgage (see Exhibit 4).

was filed in state court, and remains there. The question before this court is simply whether Plaintiff is entitled to a judgment that his title to the property is free of any conflicting claim or cloud. I conclude that Defendant Deutsche Bank, as trustee for the GSR Trust, holds a valid security interest under the assignments executed by MERS of the mortgage executed by Yuille. Deutsche Bank, again as trustee, is also the holder of the Note Plaintiff executed in connection with the $3.6 million from ABC. Defendant AHMSI, was appointed by the lender (ABC) to act as servicer of the mortgage, and there is no evidence that its responsibilities as such were ever modified or terminated. Because the evidence does not negate all competing interests in the real property, Plaintiff has not established his right under MCL 600.3204 to summary judgment on his Quiet Title claim.

Plaintiff makes a similar argument under the Restatement of Law Third, Property (mortgages). He cites the language of Section 5.4(c) that "[a] mortgage may be enforced only by, or on behalf of, a person who is entitled to enforce the obligation of the mortgage secures." Under the facts of this case, however, MERS was expressly empowered to foreclose the mortgage it received as nominee of ABC. These powers were validly assigned to Deutsche Bank as trustee for the GSR Mortgage Loan Trust. Deutsche Bank holds the underlying Note in the same capacity.

Defendants further observe that the commentary following Section 5.4(c) provides that one with responsibility to enforce a mortgage at the direction of another may properly do so. "The trust or agency relationship may arise from the terms of the agreement, or from other circumstances. Court should be vigorous in seeking to find a relationship, since the result is otherwise likely to be a windfall for the mortgagors . . .." See Exhibit 11. Plaintiff here seeks precisely the type of windfall against which the Restatement cautions.

16

The uncontested evidence establishes an unpaid note held by the GSR Mortgage Loan Trust 2006 AO1 and secured by the mortgage assigned by MERS, solely as nominee of the note holder, to the Trustee, Deutsche Bank. AHMSI's rights as servicing agent have not been terminated. For the same reasons expressed in the previous section of this Report, I find that Plaintiff has failed to establish his right to equitable relief on his Quiet Title claim.

In various arguments at Pages 12-19 of his Brief in Support of his Motion for Summary Judgment, Plaintiff offers his analysis of the terms of the GSR Trust. While he is entitled to interpret the trust as he wishes, Yuille has failed to offer admissible evidence to support his factual assertions. Ultimately, he argues that the "note holder" as defined in the note does not actually exist. I disagree. The note defines the "note holder" as "[t]he lender or anyone who takes this note by transfer and who is entitled to receive payments under this note . . .." (Exhibit 1, Note).

ABC is the lender under the terms of the note. The mortgage declares that the lender is a corporation organized and existing under the laws of the State of New York. Plaintiff offers the certification of the New York Department of State that it holds no certificate of incorporation for ABC (see Exhibit B to Plaintiff's Motion for Summary Judgment, Docket No. 128). Defendants, however, have produced documentary evidence reflecting that ABC was a d/b/a name for American Home Mortgage Corp., which surrendered its license to engage in the business of a mortgage banker on September 17, 2007 (see Exhibit 16, Page 10). I am therefore satisfied that ABC did exist on April 6, 2006 when Plaintiff executed the Note, and on August 6, 2006, the date of the GSR Mortgage Loan Trust 2006-AO1 agreement. While I agree with Plaintiff that Defendants have not

produced clear evidence of a transfer of the Note from ABC (American Home Mortgage Corp.) to GS Mortgage Security Corp., such failure does not compel the conclusion that no Note holder exists. Plaintiff admits that he signed and delivered the Note, and that he has not paid it. ABC, or its valid successor or assign would remain holder of the Note, and AHMSI remains the duly appointed servicing agent in the absence of contrary evidence. Plaintiff has not established that his title to the property is free of valid liens, and his Quiet Title claim must fail.

Plaintiff's Motion for Summary Judgment offers no argument or evidence in support of the claims stated in his Amended Counts III (Defamation); IV (Mortgage Brokers, Lenders, and Servicers Licensing Act); or V (Michigan Consumer Protection Act). Thus, he has failed to establish that no genuine issue of material fact exists, and that he is entitled to judgment as a matter of law on those claims. Accordingly, I recommend that Plaintiff's Motion for Summary Judgment be in all respects denied. Defendants' arguments in support of their Motion for Summary Judgment on Counts III, IV and V are addressed below.

## 2. Defamation Claim

Count III of Plaintiff's Amended Complaint seeks damages for defamation based upon declarations contained in the various foreclosure notices published by Defendants. The content of those notices was as follows:

> MORTGAGE SALE - Default has been made in the conditions of a mortgage made by Bruce H. Yuille, a married man and Susan L. Yuille, his wife, original mortgagor(s), to Mortgage Electric Registration Systems, Inc. as nominee for lender and lender's successors and/or assignees. Mortgage dated, April 5, 2006, and recorded on May 3, 2006 in Liber 37505 on Page 302, in Oakland County Records, Michigan, and assigned by

said mortgagee to Deutsche Bank National Trust Company, not in its individual capacity but solely as trustee on behalf of GSR Mortgage Loan Trust 2006-OA1 as assignee, on which mortgage there is claimed to be due at the date hereof the sum of 4 million, 800 thousand, 828 and 96 one hundred's dollars ($4,800,828.96), including interest at 4.222% per annum . . ..

See Exhibit 6.

A compensable claim for defamation requires that a plaintiff demonstrate: 1) that the defendant made a false and defamatory statement concerning the plaintiff; 2) that the statement was an unprivileged communication to a third party; 3) that the defendant was at least negligent in making the statement; and 4) that the statement damaged the plaintiff in some manner. Hawkins v. Mercy Health Services, Inc., 230 Mich.App. 315, 325 (1998). MCL 600.2911 codifies those elements.

To be defamatory, a statement must be "provable as false." Ireland v. Edwards, 230 Mich.App. 607, 617 (1998). Further, the statement must damage the reputation of an individual in the community, or deter other from associating with that individual. Oak Grove Cremation Center, Inc. v. Peterson, 2007 WL 1452235 at *1 (see Exhibit 14). A plaintiff must prove fault amounting to at least negligence on the part of the publishing party. MCL 600.2911(7); Rouch v. Inquirer and News of Battle Creek, 427 Mich. 157, 202 (1986).

In the case at bar, the only statement concerning Plaintiff which appeared in Defendants' publication was that the conditions of the mortgage executed by him and his spouse were in default. Yuille alleges in his Complaint that he was not in default of the ABC Mortgage (see Exhibit 10, Paragraph 68). In his deposition testimony, however, Yuille admitted under oath that he did not make the loan payments (Exhibit 3, Page 67). There is no contrary evidence in the record. Defendants have submitted record evidence that

19

Yuille's loan obligation, secured by the mortgage executed by him and his spouse was seriously in default at the time the foreclosure notices issued.

In his deposition testimony, Yuille further claimed that the statement in the Defendant's publications that the mortgage had been assigned by MERS to Deutsche Bank was also false. Presumably, that statement is based upon his position, discussed above, that the mortgage assignments were invalid. I am satisfied, however, that the published declarations were not statements concerning Plaintiff, and that, for the reasons discussed above, they were not false. In any event, a declaration regarding an assignment of a mortgage, even if false, would not damage Plaintiff's reputation or association in the community. Finally, Plaintiff testified that the Defendants' publications misstated the redemption period applicable to Plaintiff's mortgage. Once again, to the extent that the publication was inaccurate, it was not a statement "concerning Plaintiff" and was not defamatory.

Plaintiff's Response Brief asserts that Defendants representations that: (a) the mortgage had been assigned by MERS to Deutsche Bank; (b) Plaintiff was in default of the terms of the mortgage; and (c) Plaintiff owed Deutsche Bank $4,800,828.96 were all issues of fact in dispute, such that summary judgment for Defendants would be inappropriate. I am satisfied, however, that the evidence in the case regarding Plaintiff's default, the assignment of the mortgage to Deutsche Bank and the payments made and received on the underlying loan is undisputed, and sufficient to warrant a judgment. The exact amount due and owing on the underlying note is subject to precise mathematical calculation based on the evidence in the record. I am satisfied, therefore, that Defendants are entitled to summary judgment on Count III.

### 3.    Mortgage Brokers, Lenders and Servicers Licensing Act Claim

Count IV of Plaintiff's Amended Complaint alleges that Defendant American Home Mortgage Servicing, Inc. has engaged in "fraud, false pretenses and conduct that constitutes false pretenses" in violation of the State of Michigan's Mortgage Brokers, Lenders, and Servicers Licensing Act, MCL 445.1651 et seq. Plaintiff alleges in Paragraph 78g of the Amended Complaint that AHMSI engaged in fraud, false pretenses and conduct that constitutes false pretenses (Amended Complaint, Paragraph 82b and g). The pleading does not describe the acts which constituted the alleged fraud or false pretenses. Nonetheless, Plaintiff seeks a declaratory judgment "that each method, act or practice defined in Paragraph 82[3] . . . is unlawful under Section 22 of the Act." He seeks an injunction precluding AHMSI from engaging in such methods, acts or practices, and a judicial declaration that foreclosures of mortgages containing the language employed in Plaintiff's mortgage are unlawful.

Defendant AHMSI seeks dismissal of Count IV for failure to state a claim upon which relief may be granted. Defendant correctly maintains that a Complaint must conform to the pleading requirements set forth in the Federal Rules of Civil Procedure. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has held that the pleading standard of the rule demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A Complaint does not "suffice if it

---

[3] The original paragraph 82 is paragraph 78 in the current Amended Complaint. The current paragraph 82 is no longer part of Count IV.

tenders 'naked assertions' devoid of further factual enhancement." Our Circuit has "further interpreted Rule 9(b) to require that a plaintiff alleged the time, place and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." <u>Sanderson v. HCA-The Health Care Co.</u>, 447 F.3d 873, 877 (6th Cir. 2006). Complaints that do not conform to the requirements of the rule are subject to dismissal. <u>Id</u>. at 877. Defendant argues that Plaintiff has failed in Count IV of his Complaint to adequately describe the alleged conduct giving rise to the "fraud, false pretenses, and conduct that constitutes false pretenses.

In his Response Brief, Yuille argues that the Defendant has erroneously interpreted his use of the word fraud as signifying acts giving rise to a legal action for fraud. He maintains that MCL 445.1601 et seq. employs the word fraud "to describe dishonest conduct." So used, the work "means something that is intended to deceive people." (Docket No. 129, Page 18). He asserts in his Brief that AHMSI had no right to service Plaintiff's mortgage, and that it retained foreclosure counsel and vested them with authority to draft fraudulent assignments of Plaintiff's mortgage and instructed them to commence foreclosure proceedings to deprive Plaintiff of his title. He further asserts that AHMSI drafted the foreclosure notices with intent to cause him to believe that the note holder had declared a default and accelerated the debt, when the "Note Holder" did not exist. Finally, he argues that AHMSI "falsely represented that it represented such nonexistent Note Holder." (Docket No. 129, Pages 18-19). Not only are those allegations omitted from the Amended Complaint, Plaintiff points to no evidence in the record tending to establish the dishonest acts which he belatedly alleges. Based upon my review of the record, I am satisfied that Plaintiff has failed to establish a claim of conduct violative of MCL 445.1651

et seq.  The evidence confirms that AHMSI was the duly appointed servicing agent for Plaintiff's mortgage.  There is no evidence that its right to act as such was ever terminated or modified.  The record clearly reflects that Plaintiff executed the Note and Mortgage and failed to pay the debt.  The Amended Complaint fails to allege any discrete act by AHMSI in violation of the statute, and Plaintiff has failed to identify any evidence in the record which might establish such a violation.  No reasonable juror could find otherwise.  I recommend that the Court enter judgment for Defendant AHMSI on Count IV of the Complaint.

### 4.  Michigan Consumer Protection Act ("MCPA") Claim

Count V of the Amended Complaint is based upon the Michigan Consumer Protection Act.  Plaintiff claims that the mortgage language employed by MERS is "ambiguous, inconsistent and violates subsections (n), (m) and (bb) of Section 3 of the statute (MCL Section 445.903).  He seeks an injunction against the use of the MERS mortgage in Michigan, and a declaration that his mortgage is "voidable, null, void and of no effect and otherwise unenforceable" against him.

Defendants counter that the Michigan Supreme Court has held the MCPA inapplicable where "the general transaction is specifically authorized by law, regardless of whether the specific misconduct is prohibited."  Smith v. Globe Life Ins. Co., 460 Mich. 446, 465-66 (1999).  Subsequent cases in both state and federal courts have held that the MCPA does not apply to claims arising from residential mortgage loan transactions. Newton v. Bank West, 262 Mich.App. 434 (2004); Mills v. Equcredit Corp., 294 F.Supp. 2nd

903, 910 (E.D. Mich. 2003); <u>Dyer v. Flagstar Bank FSB</u>, 2005 WL 177215 at *1 (unpublished, Mich. Ct. of App. Jan. 29, 2005).

Plaintiff maintains that the MERS mortgage language violates the MCPA "because the 'nominee' language and MERS' interpretation of the mortgage language causes a probability of confusion or of misunderstanding as to the legal rights, obligations or remedies of a party to a transaction, or as to the terms or conditions of credit if credit is extended in a transaction." He asserts that Count V is directed solely at the conduct of MERS, which is "not licensed under any state of (sic) federal law, nor subject to any regulatory scheme." Plaintiff, however, received his loan from ABC, and granted the security interest to MERS solely as the nominee of ABC. As discussed earlier in this report, ABC was a d/b/a name for American Home Mortgage Corp., a licensed and regulated entity. Plaintiff has offered no case law in support of his position that MERS' participation as nominee rendered the transaction subject to the terms of the Michigan Consumer Protection Act. I am satisfied that the mortgage loan at issue in this case falls within the exception provided in the statute. I recommend that Judgment be rendered for the Defendants on Count V.

## III.  <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues

but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


<u>s/Donald A. Scheer</u>
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: September 22, 2010

_____

## CERTIFICATE OF SERVICE

I hereby certify on September 22, 2010 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 22, 2010: **Bruce Yuille.**

<u>s/Michael E. Lang</u>
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217